## CONYNGHAM v. BALDWIN.

(Circuit Court of Appeals, Second Circuit. January 8, 1903.)

No. 44.

1. RELEASE OF PLEDGE—CONTRACT OF THIRD PERSON—LIABILITY—CONDITIONAL CHARACTER—HAPPENING OF CONDITION.

In consideration of the surrender of his brother's note for $6,420 and corporate stock pledged to secure it, defendant promised to pay plaintiff $3,000 in cash, and, in the event that either the note or the stock should prove of "sufficient value to pay the balance of the note, or any part of it, he would pay accordingly." *Held*, that an offer by plaintiff to take back the stock in satisfaction of defendant's promise, which defendant refused, was not equivalent to a determination of the market value of the stock, so as to render defendant absolutely liable for the balance of the note; it being at most a controvertible admission that he considered the stock of more value, and worth more to him, than a release of his liability.

In Error to the Circuit Court of the United States for the Southern District of New York.

Geo. W. Pinney, Jr., for plaintiff in error.

Edmund L. Mooney, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was the defendant in the court below, and brings this writ of error to review a judgment for the plaintiff upon a verdict directed by the court.

The action was brought to recover upon a promise of the defendant made upon the delivery to him of his brother's note for $6,420 and a certificate for 246 shares of the stock of the Jefferson Iron Company, which plaintiff held as collateral security for the payment of the note. In consideration of the surrender of the note and scrip by the plaintiff, the defendant promised to pay her $3,000 cash, and that, in the event that either the note or the stock should prove of "sufficient value to pay the balance of the note, or any part of it, he would pay accordingly." Defendant paid the $3,000. The controversy on the trial was whether he had become liable to pay plaintiff the balance, or any part of it.

The only evidence introduced on the trial tending to show that the stock or note ever became of any value was that the plaintiff had, subsequently to the delivery of them to the defendant, received an offer from one Elliott to pay her $3,000 for the stock if she could

¶ 1. Rights and liabilities of pledgees of corporate stock, see note to Frater v. Old Nat. Bank, 42 C. C. A. 135.

get the defendant to turn it over to her; that she communicated this offer to the defendant, and defendant promised that, if she could make the sale, he would try to carry out any instructions given by her; that subsequently Elliott renewed his offer, and plaintiff communicated it to the defendant, and the latter then insisted upon being paid the $3,000 before transferring the stock; and that subsequently she made him a proposition, which was, in substance, that if he would send her the certificate, "so that she could have the stock transferred on the books of the company," she would accept it in satisfaction of his promise, which proposition was declined by the defendant.

In behalf of the defendant, Elliott testified that he had never made any offer to purchase the stock of the plaintiff. The defendant also introduced testimony to show that it had never been of any appreciable value.

The trial judge took the case from the jury, and directed a verdict for $3,420 and interest, and to this ruling the defendant duly excepted. The assignments of error challenge the correctness of the ruling.

The trial judge, in directing a verdict, proceeded upon the theory that the plaintiff's proposition to the defendant to take the stock and discharge him from further liability upon his promise was equivalent to an offer by her to pay the defendant $3,420, the balance of the note, and the defendant, by refusing that offer, precluded himself from asserting that the stock was not of that value.

We think this ruling was erroneous. The offer and refusal was evidence against the defendant in the nature of an admission that he considered the stock to be of some value, and worth more to him than a release of his liability upon his promise. Except as such an admission the evidence was incompetent. Even if he had admitted in terms that the stock was of the value of $3,420, that admission would not have concluded him from subsequently disproving its truth. By the ruling of the court he was held liable as if his promise had been an undertaking to pay the plaintiff such a sum, not exceeding the balance due on the note, as she might choose to offer him for the stock. That was not the undertaking, either in terms or spirit. Such a promise would have put it in her power to exact of him immediately, if she desired, the whole balance due upon the note, or any part of it which she might choose. It would have given her the right to fix the value of the stock arbitrarily. Neither of the parties contemplated such an obligation. The promise was that he should pay her the value of the stock, if it should prove to be of any value; not a value fixed by her own estimate, or by his, but its fair and reasonable value. The measure of his liability upon this promise was the intrinsic or market value of the stock. By the ruling not only was his liability measured by a different standard, but he was held liable as though the plaintiff had made him a cash offer of $3,420 for the stock, which he refused. If the offer and refusal tended to prove that the parties considered the stock as equivalent in value to the release of the defendant's liability, it did not have the slightest tendency to prove that they considered his liability to be $3,420.

Without intending to decide whether, upon the case made, there

was sufficient evidence to authorize the jury to find that the defendant was liable in any sum whatever, the judgment must be reversed for the reasons indicated. Ordered accordingly.